FRANK ARNOLD CONTRACTORS, INC., Appellee,

v.

VILSMEIER AUCTION COMPANY, INC., Appellant,

and

ITT Industrial Credit Company.

No. 86–1201.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Nov. 20, 1986.

Decided Dec. 2, 1986.

John F. Ledwith, LaBrum & Doak, Philadelphia, Pa., for appellant.

Frederick T. Lachat, Jr., Gallagher, Wheeler, Reilly & Lachat, Philadelphia, Pa., for appellee.

Before SEITZ, GIBBONS, Circuit Judges, and BARRY, District Judge.*

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Defendant Vilsmeier Auction Company, Inc. ("Vilsmeier") appeals from the final judgment of the district court in favor of plaintiff Frank Arnold Contractors, Inc. ("Arnold"). We have jurisdiction under 28 U.S.C. § 1291.

### I.

In August 1980, ITT Industrial Credit Company ("ITT") loaned money to Edward McGinn General Contractors, Inc. ("McGinn"). In return, McGinn gave ITT a security interest in several pieces of construction equipment, including a Caterpillar hydraulic excavator. ITT properly perfected the security interest.

In the summer of 1981, ITT became aware that McGinn was experiencing significant financial problems and had failed to make certain payments to ITT on its loan agreements. While the parties dispute succeeding events, it is clear that following discussions between McGinn and ITT representatives the hydraulic excavator was sold at auction by Vilsmeier in October 1981.

Vilsmeier president Hutchinson admitted that prior to the commencement of the auction, Vilsmeier made a public announcement to the effect that all of the equipment being sold was free and clear of any liens, encumbrances or other security interests. Vilsmeier did not disclaim this warranty of title. Appellee Arnold purchased the hydraulic excavator at the auction for approximately $44,000, and began using it in its business. While it possessed the machine, Arnold invested over $5,000 in repair and maintenance of the excavator.

In May 1983, Arnold learned that ITT was suing it to recover the excavator on the basis of the perfected security interest. Although the suit, filed in federal court, was dismissed for lack of jurisdiction, Arnold incurred legal expenses of over $3100. ITT subsequently filed the same claim against Arnold in state court. On the advice of counsel, Arnold surrendered the excavator to ITT in October 1983. Arnold thereafter purchased a replacement excavator for $41,000.

Arnold later filed this diversity action against both Vilsmeier and ITT. During trial before a jury, the district court directed a verdict as to liability for Arnold and against Vilsmeier. The court also granted ITT's motion for a directed verdict as to liability. The court permitted the jury to determine Arnold's damages. After considering Vilsmeier's and Arnold's evidence on damages, the jury awarded Arnold $52,150.50. The district court subsequently denied Vilsmeier's motion for a new trial, and entered judgment in favor of Arnold. This appeal followed.

### II.

Vilsmeier raises two challenges to the proceedings in the district court. We will consider these challenges in turn.

### A.

Vilsmeier first contends that the district court erred in directing a verdict of liability in favor of Arnold and against it. Our review of the grant of a directed verdict is plenary and we apply the same standard as would the district court in passing on the motion originally. *Finkle v. Gulf & Western Mfg. Co.*, 744 F.2d 1015, 1021 (3rd Cir.1984).

Vilsmeier argues that the district court's grant of a directed verdict for Arnold improperly precluded the jury from consider-

* The Honorable Maryanne Trump Barry, United States District Judge for the District of New Jersey, sitting by designation.

ing whether ITT had waived its security interest in the excavator purchased by Arnold. Under Vilsmeier's view of the case, if ITT had waived its security interest in the excavator, Vilsmeier sold the excavator without an encumbered title, and Arnold would not be entitled to damages for breach of warranty of title.

The district court rejected Vilsmeier's view of the case. The court determined that whether ITT had actually waived its security interest was irrelevant to Arnold's cause of action, because the excavator had a cloud on its title. The district court held as a matter of law that Vilsmeier breached its warranty of title to Arnold by selling the excavator with a cloud on its title, regardless of whether the title was actually encumbered.

The district court's ruling construes § 2–312 of the Uniform Commercial Code ("UCC"), adopted in Pennsylvania. 13 Pa. Cons.Stat.Ann. § 2312 (Purdon 1984). That provision states that as a general rule, a contract for the sale of goods includes a warranty by the seller that the goods sold are sold without title encumbrances, unless the warranty is disclaimed. Comment 1 to § 2312 explains further that the provision provides for a "buyer's basic needs in respect to a title." 13 Pa.Cons. Stat.Ann. § 2312, Comment 1. A seller accomplishes this objective whenever he transfers to his purchaser "a good clear title ... in a rightful manner so that [the purchaser] will not be exposed to a lawsuit in order to protect it." Id. Finally, Comment 1 notes that "[d]isturbance of quiet possession, although not mentioned specifically, is one way, among many, in which the breach of warranty of title may be established." Id.

The parties have not called to our attention any decisions of the Pennsylvania courts construing § 2312 under the circumstances present here, and our research reveals none. Accordingly, we are bound to determine how the Pennsylvania Supreme Court would rule on the matter were the question before it. Brown v. Caterpillar Tractor Co., 696 F.2d 246, 250 (3rd Cir. 1982).

While the Pennsylvania courts have not addressed whether a cloud on a title is sufficient to breach a seller's warranty under § 2312, the courts in a number of other states have construed their versions of UCC § 2–312 in these circumstances. In the majority of these cases, the courts have concluded that there need not be an actual encumbrance on the purchaser's title to permit recovery for a breach of warranty of title. Often relying on the above-quoted language from Comment 1, the courts have indicated that so long as there is a "substantial shadow" on the purchaser's title, American Container Corp. v. Hanley Trucking Corp., 111 N.J.Super. 322, 332, 268 A.2d 313, 318 (Ch.Div.1970), the protection of § 2–312 "applies to third party claims of title no matter whether eventually determined to be inferior or superior to the buyer's ownership." Jefferson v. Jones, 286 Md. 544, 550, 408 A.2d 1036, 1040 (1979), See, e.g., City Car Sales, Inc. v. McAlpin, 380 So.2d 865, 867 (Ala.Civ. App.1979), cert. denied, 380 So.2d 869 (Ala. 1980); Wright v. Vickaryous, 611 P.2d 20, 22 (Alaska 1980); Ricklefs v. Clemens, 216 Kan. 128, 132–35, 531 P.2d 94, 99–100 (1975); Jefferson, 286 Md. at 544–55, 408 A.2d at 1036–42; Hanley, 111 N.J.Super. at 329–32, 268 A.2d at 317–18; John St. Auto Wrecking v. Motors Ins. Corp., 56 Misc.2d 232, 233–35, 288 N.Y.S.2d 281, 283–84 (1968); Catlin Aviation Co. v. Equilease Corp., 626 P.2d 857, 860 (Okla.1981); Saenz Motor v. Big H Auto Auction, Inc., 653 S.W.2d 521, 525 (Tex.App.1983), affirmed, 665 S.W.2d 756 (Tex.1984). This view is supported by the policy that a purchaser should not be required to engage in a contest over the validity of his ownership.

At least two courts have indicated, however, that a purchaser must demonstrate more than a cloud on his title before he will be permitted to recover for a breach of warranty of title. These courts apparently require the purchaser to establish the existence of a superior or paramount title in a third party. See C.F. Sales, Inc., v. Amfert, Inc., 344 N.W.2d 543, 554 (Iowa 1983);

*Skates v. Lippert,* 595 S.W.2d 22, 25 (Mo. Ct.App.1979).

 We believe the majority approach is well-reasoned and is firmly grounded in the policy of the statute. For this reason, we believe that were the Pennsylvania Supreme Court confronted with this question, it would hold that a purchaser can recover for a breach of warranty of title when he demonstrates the existence of a cloud on his title, regardless of whether it eventually develops that the third party's title is superior. We need not in this case determine all the circumstances in which a purchaser's title is clouded, *cf. Jefferson,* 286 Md. at 550–53, 408 A.2d at 1040–41, for ITT's two lawsuits plainly demonstrate the cloud over Arnold's title. Under these circumstances, the district court's entry of directed verdicts in favor of Arnold and against Vilsmeier was not error.

### B.

Vilsmeier next contends that the district court erred in refusing to grant a new trial on the ground that the jury's damages verdict was unsupported by the evidence. This court reviews the district court's decision for abuse of discretion. *American Bearing Co. Inc. v. Litton Industries,* 729 F.2d 943, 948 (3rd Cir.), *cert. denied,* 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984). Where, as here, an appellant asserts that the jury's assessment of damages is too high, a district court may be said to have abused its discretion only if the amount of damages awarded is "shocking." *Dowd v. Webb,* 337 F.2d 93, 97 (3rd Cir.1964).

Vilsmeier's contention that the jury erred in assessing damages is based on the fact that the jury apparently gave more credence to Arnold's damages evidence than it gave to Vilsmeier's. The record demonstrates, however, that the jury's award was perfectly reasonable. In these circumstances, the district court did not abuse its discretion in denying the motion for a new trial.

### III.

For the reasons set forth above, the judgment of the district court will be affirmed.